UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ZINEB LILI; and | : | |
| | : | |
| MAHMOOD  YOUSEF ISMAEL AL ANI | : | Case No.:  2:25-cv-00425 |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| DONALD J. TRUMP, IN HIS OFFICAL CAPACITY, PRESIDENT OF THE UNITED STATES OF AMERICA; | | |
| | | |
| KRISTI NOEM, SECRETARY | : | Hon. _____ |
| U.S. DEPARTMENT OF HOMELAND SECURITY, | : | |
| | | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, | : | |
| | | |
| KIKA SCOTT, SENIOR OFFICIAL PERFORMING THE DUTIES OF THE DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES | | COMPLAINT |
| | | |
| ANDREW DAVIS, ACTING DEPUTY DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES | : | |
| | : | |
| Defendants. | : | |

## **INTRODUCTION**

1. Plaintiffs Zineb Lili ("Petitioner" or "Mrs. Lili) and Mahmood Al Ani ("Beneficiary" or "Mr. Al Ani") bring this action to challenge Defendant United States Citizenship and Immigration Service's ("USCIS" or "Service") improper denial of Mrs. Lili's Form I-130

1

Petition for Alien Relative, seeking to classify her husband, Mr. Al Ani, as the spouse of a United States citizen pursuant to 8 U.S.C. 201(b)(2)(A)(i).

2. This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.,* the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.,* as amended, and the regulations of the USCIS, 8 C.F.R. § 1.1, *et seq.*

## JURISDICTION

3. Jurisdiction in this case is proper under 5 U.S.C. §§551 and 701, *et seq.* (Administrative Procedures Act). This Court has original jurisdiction under 28 U.S.C. §1331 (federal subject matter jurisdiction) and 28 U.S.C. § 1361 (jurisdiction over action for mandamus). The USCIS decision also violated Plaintiff's due process rights under the Fourteenth Amendment of the U.S. Constitution.

## VENUE

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because Defendants are officers or employees of the United States or agencies thereof acting in their official capacities. Substantial part of the events or omissions giving rise to the claims occurred in this district, where Plaintiff Mrs. Lili resided, and where Defendants have agents and routinely conduct business.

## PARTIES

5. Plaintiff Zineb Lili, (hereinafter "Mrs. Lili") a U.S. citizen, lives in Columbus, Ohio. Mrs. Lili is the petitioner who filed the I-130 Petition on behalf of her husband, Mahmood Yousef Ismael Al Ani "Mr. Al Ani."

6. Plaintiff, Mr. Al Ani a native and citizen of Iraq, lives in the United States with his wife Mrs. Lili. He is the Beneficiary of the I-130 Petition filed by his wife Mrs. Lili.

7. Defendant United States of America is responsible for the adjudication of the immigration petitions, including I-130 petition filed by Plaintiff, Mrs. Lili on behalf of her husband, Mr. Al Ani.

8. Defendant Kristi Noem is the Secretary of the U.S. Department of Homeland Security

9. ("DHS"). Defendant Noem is sued in her official capacity.

10. Defendant DHS is a Department of the United States government.

11. Defendant Kika Scott is the Senior Official Performing the Duties of the Director of U.S. Citizenship and Immigration Services ("USCIS"). Defendant Scott is sued in her official capacity.

12. Defendant Andrew Davis is the Acting Director of the USCIS. Defendant Davis is sued in his official capacity.

## LEGAL FRAMEWORK

13. A visa petition may be denied pursuant to INA § 204(c) where there is evidence in the record to indicate that an alien previously conspired to enter into a fraudulent marriage. *Matter of Laureano*, 19 I. & N. Dec. 1 (BIA 1983). Section 204(c) of the Immigration and Nationality Act states in relevant part:

(c) Notwithstanding the provisions of subsection (b) no petition shall be approved if
(1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws or
(2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c). A marriage is fraudulent for purposes of § 1154(c) if the couple did not "intend to establish a life together at the time they were married." *Matter of Laureano*, 19 I. & N. Dec. 1, 2-3 (BIA 1983).

14. The Code of Federal Regulations provides the following:

*Documentation.* The petitioner should submit documents which cover the period of the prior marriage. The types of documents which may establish that the prior marriage was not entered into for the purpose of evading the immigration laws include, but are not limited to:

(1) Documentation showing joint ownership of property;
(2) A lease showing joint tenancy of a common residence;
(3) Documentation showing commingling of financial resources;
(4) Birth certificate(s) of child(ren) born to the petitioner and prior spouse;
(5) Affidavits sworn to or affirmed by third parties having personal knowledge of the bona fides of the prior marital relationship; or
(6) Any other documentation which is relevant to establish that the prior marriage was not entered into in order to evade the immigration laws of the United States.

8 C.F.R. § 204.2(a)(1)(i)(B).

15. The regulation corresponding to section 204(c) of the Act, at 8 C.F.R.§204.2(a)(1)(ii) states:

*"Fraudulent marriage prohibition.* Section 204(c) of the Act prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of such an attempt or conspiracy, regardless of whether that alien received a benefit through the attempt or conspiracy. Although it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy, the evidence of the attempt or conspiracy must be contained in the alien's file."

16. The degree of proof necessary to constitute "substantial and probative evidence" is more than a preponderance of evidence, but less than clear and convincing evidence; that is, the evidence has to be more than probably true that the marriage is fraudulent. *Matter of Singh*, 27 I&N Dec. 598 (BIA 2019) The nature, quality, quantity, and credibility of the evidence of marriage fraud contained in the record should be considered in its totality in determining if it is "substantial and probative." *Id*. The application of the "substantial and probative evidence" standard requires the examination of all of the relevant evidences and a determination as to whether such evidence, when viewed in its totality, establishes, with sufficient probability, that the marriage is fraudulent. *Id*.

4

## FACTUAL ALLEGATIONS

*Mr. Al Ani and Mrs. Zamzam Khalif Jama's marriage*

17. Beneficiary, Mahmood Al Ani, entered the United States on or around September 13, 2011, as an B1, Visitor Visa.

18. While Mr. Al Ani was in the United States, he met his former spouse Ms. Zamzam Jama (hereinafter "Ms. Jama") and the couple married on April 12, 2017 in Columbus, Ohio.

19. On September 12, 2018 Ms. Jama and the Beneficiary concurrently filed Forms I-130, Petition for Alien Relative, and Form I-485, Application to Register Permanent Residence or Adjust Status.

20. On April 23, 2019, Ms. Jama and the Beneficiary were interviewed at the Columbus Field Office in connection with Forms I-130 and I-485. According to USCIS, the interviewing officer determined that the testimony given by Ms. Jama and the Beneficiary was inconsistent on some points and provided vague answers to others.

21. On February 23, 2020 when USCIS Officers attempted an unannounced site visit at 1822 Bucher Street, Columbus, Ohio, (the address referenced on Ms. Jama's Social Security Administration benefits statement), they were unable to make contact with Ms. Jama or the beneficiary. "There was also a failed attempt to make contact with either Ms. Jama or the beneficiary at 2655 McGuffey Road, Columbus, Ohio. This was the address listed on Ms. Jama's Form 1-130 and Ohio identification card officers from the USCIS Fraud Detection and National Security ("FDNS") conducted a site visit in connection with a separate immigration benefit filing. According to USCIS, during this site visit, FDNS officers discovered that the Beneficiary was residing at that location. The individual whose

residence FDNS was visiting purportedly told the Officers that the Beneficiary had been residing at that location because he and Ms. Jama were having problems."

22. However, Officers "completed an unannounced site visit with Ms. Jama at 1555 Whispering Willow Lane, Hilliard, Ohio, Columbus, Ohio, which was listed on Franklin County Municipal Court records as Ms. Jama's last address after separating from Mr. Deforest Flowers."

23. Ms. Jama was found at this address with three women, two she claims as her sisters and one as her mother. She stated neither of her sisters on-site, or mother knew of her marriage. The Officers pointed out this appeared very unusual, in light of the fact, she claimed she and the beneficiary lived with them at this address. The Officers asked Ms. Jama to explain the reason her family members, with whom she lived, were not aware of the marriage. She responded it was not their business.

24. Over the course of the visit and questions by the Officers, Ms. Jama stated the beneficiary moved from Jasmine Lane to another address in Hilliard. She stated the beneficiary lived at another address in Hilliard whereas she lived at this address. "Over the course of the questioning Ms. Jama retracted and restated her statements regarding her living arrangements at least three times. Ms. Jama was not able to recall the address where she and the beneficiary purportedly lived together. She could not recall the cost of rent at their claimed joint residence. She claimed she did not know the fees for rent at the Hilliard address she purportedly shared with the beneficiary, because the beneficiary did not work, and the beneficiary's uncle on his father's side paid the rent. She claimed she and the beneficiary lived together and with no other individuals." *Id.*

25. Ms. Jama was uncooperative and cut off further inquiry by declining to permit Officers access to her family members who were on-site and refused to call the beneficiary to verify basic assertions she made about her marriage to the beneficiary. "The record of testimony and address updates in this case reflected she and the beneficiary asserted to USCIS they lived together at 5267 Jasmine Lane since January 2018. On October 1, 2018, Ms. Jama was arrested for domestic violence against her live-in boyfriend named Deforest Flowers at her home address: 2655 McGuffey Rd. She was booked into jail for the same incident and claimed to officials at that time she was single, not married." *Id.*

26. On January 22, 2019 FDNS officers also conducted a site visit to the residence of Ms. Jama and the Beneficiary, however, no one was home at that time. According to USCIS, "the officers then contacted the property management for that residence who told them that Ms. Zamzam was the only occupant of the apartment and that she had reported her marital status as unmarried. The property management personnel also informed the officers that Ms. Zamzam was required to report any change in her marital status to the management company, but had not done so." *Id.*

27. On March 24, 2020, USCIS issued a Notice of Intent to Deny (NOID) advising Ms. Jama of the derogatory evidence listed above and notifying her the evidence supporting the petition was insufficient to establish the beneficiary's eligibility for the classification requested at the time she filed the petition. Ms. Jama did not respond to the NOID. Additionally, based on review of the testimony and documentation in the record, USCIS found there was substantive and probative evidence of the beneficiary's attempt to obtain a benefit through a fraudulent marriage. Moreover, an open source search of the Franklin

County Clerk of Courts identified Ms. Jama and the beneficiary were divorced on July 28, 2020, case number 20 DR 001821.

28. On October 1, 2020, Ms. Jama's Form I-130 and the beneficiary's Form 1-485 were denied.

*Mr. Al Ani and Mrs. Lili's marriage (Second Petition)*

29. On September 15, 2020, Plaintiff, Mrs. Lili and the Beneficiary married in Columbus, Ohio.

30. On March 1, 2021, Mrs. Lili and the Beneficiary concurrently filed Form I-130, Petition for Alien Relative, and Form I-485, Application to Register Permanent Residence or Adjust Status. USC IS received the second Form 1-130 filed on behalf of the beneficiary, (MSC2191048155).

31. On November 12, 2021, Ms. Lili and the beneficiary appeared for an interview with an Immigration Services Officer in connection with your Form 1-130 and the beneficiary's Form 1-485, Application to Register Permanent Residence or Adjust Status, (MSC2191048155). At the interview, Mrs. Lili and the beneficiary provided testimony under oath.

32. It was determined that Ms. Lani's testimony and the beneficiary's testimony were consistent with respect to; "You and the beneficiary have a child together, you have a child from a previous relationship and that child lives with you and the beneficiary, you and the beneficiary do not have a joint bank account, you and the beneficiary traveled to Washington, D.C. to pick up the beneficiary's mother, who was visiting him."

33. It was noted that Youssef Mahmood Al Ani, Ms. Lani's son with the beneficiary, was born on September 19, 2020. This was shortly after the beneficiary's divorce on July 28, 2020. It further provided evidence the beneficiary and Ms. Jama were not in a bonafide marriage. After reviewing the evidence and the testimony provided at the interview, USCIS records

indicated the beneficiary was not eligible for the requested benefit sought. Based on the review of the testimony and documentation in the record, USCIS found substantive and probative evidence of the beneficiary's attempt to obtain a benefit through a fraudulent marriage. Accordingly, pursuant to INA 204(c)(l), it appeared that the approval of the petition was prohibited by statute.

34. On March 29, 2022, USCIS issued a Notice of Intent to Deny (NOID) advising the evidence supporting the petition was insufficient to establish eligibility of the benefit sought and providing an opportunity to submit additional evidence. Specifically, the NOID cited the discrepancies and evidentiary shortcomings set forth above.

35. Ms. Lili responded to the NOID on June 28, 2022, and submitted the following documentation: (1) An affidavit from the beneficiary; (2) A copy of a Judgment Entry; (3) A copy of an Incident/Investigation Report; (4) A picture of the beneficiary and Ms. Jama.

36. In Mrs. Lali's submitted response to the NOID, there was an attempt to reconcile some of the discrepancies cited in the NOID. In the beneficiary's statement, he states that "he was in a toxic relationship with Ms. Jama. He states she has mental health issues and she would disappear without notice and she would become violent with him and others."

37. The beneficiary stated that "Ms. Jama sabotaged his case by intentionally making fabricated statements. He states he can not address all of the inconsistencies in the NOID nor provide Ms. Jama's medical records to support his claim of her having mental health issues, but he contends that his marriage to her was in good faith. This affidavit is given minimal consideration. The beneficiary did not address the inconsistencies in the NOID nor the site visit by the Immigration Officers. The copies of the medical records are given consideration."

38. After reviewing the evidence and the testimony provided at the interview, USCIS records indicate that "the beneficiary is not eligible for the requested benefit sought for the following reason(s). The Beneficiary's affidavit and the copies of Ms. Jama's criminal record do not overcome the discrepancies at the interview nor the site visit. USCIS found substantive and probative evidence of the beneficiary's attempt to obtain a benefit through a fraudulent marriage. Accordingly, pursuant to INA 204(c)(l), it appears the approval of the petition is prohibited by statute."

39. USCIS denied this second petition on September 29, 2022.

*Mr. Al Ani and Mrs. Lili's marriage (Second Petition)*

40. On November 10, 2022, Mrs. Lili and the Beneficiary concurrently filed a second Form I-130, Petition for Alien Relative, and second Form I-485, Application to Register Permanent Residence or Adjust Status (Hereinafter "Third Petition").

41. On January 13, 2025, Field Office Director issued a Decision denying Mahmood Al Ani's second Form I-485, and Form I-130 petition (hereinafter "2025 denial"), attached as Exhibit 1.  USCIS concluded that "based on review of the entire record" Mahmood Al Ani failed to establish that the Beneficiary's prior marriage to Ms. Jama was bona fide and not entered into in order to circumvent immigration laws so that the Beneficiary could obtain permanent resident status." *Id*.

42. It was stated that "The evidence in the record and testimony did not establish the claimed relationship. Both you and the beneficiary were interviewed separately concerning the bona fides of your marriage. Your testimony and the beneficiary's testimony were consistent with respect to: (1) How long you've known each other; (2) Your shared religion; (3) The cost of your monthly bills; (4) Your work hours; and (5) The layout of the house" *Id*.

10

43. Further, "It is noted that during the interview you both testified that you have known each other for four years. USCIS also notes Ms. Lili listed two sons on your application, Wassim El Haloui, born December 12, 2012 and Youssef Mahmood Al Ani, born on September 19, 2020. Your Decree of Dissolution notes you were married July 15, 2010 through February 23, 2015, however it does not list any children born to the marriage. As noted previously, your second son was born shortly after the beneficiary's divorce on July 28, 2020. It further provided evidence the beneficiary and Ms. Jama were not in a bona fide marriage." *Id*.

44. USCIS also acknowledged the:

> [D]ocumentary evidence submitted with your current petition regarding the beneficiary's prior marriage. However, the evidence submitted does not explain why Ms. Jama was found living at a different address as the beneficiary with her three sisters at 1555 Whispering Willow Lane, Hilliard, Ohio, Columbus, Ohio. In addition, Ms. Jama was arrested on October 1, 2018 for domestic violence against her live-in boyfriend named Deforest Flowers at the home address: 2655 McGuffey Rd, Columbus, Ohio, during the beneficiary's marriage to Ms. Jama. This does not show evidence the beneficiary and Ms. Jama resided together in a bonafide marriage as husband and wife.

45. On December 17, 2024, USCIS sent Mrs. Lali a NOID regarding the instant petition. On January 03, 2025, USCIS received a response to the December 17, 2024 NOID. The filing, which was prepared by the couple's prior counsel, Rateb (Ron) Khasawneh, included, among the supporting documents: (1) A cover letter from the attorney of record, Mr. Khasawneh; (2) Copy of the December 17, 2024 NOID; (3) Sworn Affidavit of Zineb Lili; (4) Copy of Sworn Affidavit of Mahmood Al Ani, previously submitted; (5) Copy of Sworn Affidavit of Zamzam Jama, previously submitted; (6) Zamzam Jama's criminal records, previously submitted.

46. USCIS noted in their NOID:

> [Y]ou have established your marriage to the beneficiary is bona fide by a preponderance of the evidence. Moreover, USCIS acknowledges all of the evidence you have submitted in support of the instant petition. However, it is incumbent upon the petitioner to resolve the inconsistencies [in the record] by independent objective evidence. Attempts to explain or reconcile the conflicting accounts, absent competent objective evidence pointing to where the truth, in fact lies, will not suffice. I, 19 I&N Dec. 582, 591 - 92 (BIA 1988). Here, the Affidavits you submitted are not supported by any objective evidence. Therefore, they are not probative, and will be assigned only nominal evidentiary weight. *Id.*

47. It was determined that "the testimonial discrepancies from the April 23, 2019 interview remain unresolved. Further, in light of the results of the USCIS site visits, and the fact that [Mrs. Lili's] second son was born shortly after the beneficiary's divorce on July 28, 2020, it appears the beneficiary entered into marriage with Ms. Jama. solely for immigration purposes."

48. The filing, which was prepared by the couple's prior counsel, Rateb (Ron) Khasawneh, included, among the supporting documents a copy of a sworn Affidavits from Ms. Lili See Exhibit 3, Mr. Al Ani See Exhibit 4, and an Affidavit submitted by the Beneficiary's former spouse, Ms. Jama. *See* Exhibit 2

49. The Affidavit from Ms. Jama, dated October 10, 2022, states:

*I, the undersigned, Zamzam Khalif Jama, DOB: 11/07/1983, under the penalty of perjury:*

1. *I married Mahmood Al Anion* [Mr. Ani] *April 12, 2017. I married him in good faith and not for*

   *immigration purposes. I filed immigration papers for him but they were denied for reasons in the decision and for which I will provide the following.*

2. *I suffer from depression and take medications for my illness. I receive disability income, SSI, from the government because of my disability.*

3. *Due to my depression I have episodes of uncontrollable behavior. That was the case when the incident at the coffee shop took place and the police arrested me. I was in jail*

*for about two months and after that they took me to Twin Valley Behavioral for about a month. Similarly, when I get into those moods I say and do things out of control. My husband at the time, Mahmood, suffered the brunt of this all during the time we were married. I took my anger on him many times. Also at times I would just disappear and go stay with relatives, such as my mother, for extended periods of time. This explains the discrepancies in our answers as to where we lived and how long. There were several times that we stayed apart until I got better and got out of my depressed condition.*

4. *On various occasions, including during my USCIS interview with Mahmood, intentionally did not care what I say and how it might affect Mahmood because I was just in one of those moods. Similarly, when the officers came to visit at my mother's home, I just did not care about the effect of my answers on Mahmood. However, I cannot speak about why my sister did not tell the officers that I was married to Mahmood. She knew that and all my family knew that. We did not marry in secret nor did we ever intended to keep it a secret.*

5. *I was never in a relationship with Deforest Flowers. That guy never lived with me at the*

   *McGuffey Rd address. The police unfortunately did not believe me that I lived there and he did not. After the police arrested me my then husband, Mahmood, tried to enter the home but Mr. Flowers threatened him with violence and Mahmood just left.*

6. *I did have one child out of wedlock. The baby was conceived during one of those episodes when my mood is messed up and did things without considering the consequences. The baby now is in the custody of my friend in Michigan.*

7. *Mahmood was good to me and for me. It was unfortunate that I did not appreciate the relationship with him and the way he treated me. I know he married me in good faith and*

8. *would have stayed with me the rest of his life had I not messed up our relationship.*

*Id.*

50. The Affidavit from Mr. Al Ani, dated June 22, 2022, states:

   *1. My Name is Mahmood Yousif Ismael Al Ani and I am writing this letter to explain the circumstances of my prior marriage and of my previous interview that has resulted in the Notice of Intent to Deny dated March 29, 2022. Prior to my current marriage, I was in a toxic relationship with my ex-wife Zamzam K. Jama. Zamzam has serious mental health issues that escalated heavily during the course of our marriage. At times she would disappear without any notice and even become violent with me and others. She has gotten herself into serious trouble with the police over her uncontrollable outbursts and has acted completely outrageously as well. I have included some of these criminal reports where even the police could not control her and proceeded to spit all over the backseat of a squad car while also making death threats.*

   *2. I mention this situation to express that she purposely sabotaged my case out of spite. I*

*cannot go point-by-point to address our inconsistencies in the NOID because her answers were intentionally fabricated while mine were all true. I have no idea where she is and have tried repeatedly to contact her, especially after receiving the NOID. As such, I do not have the authority to request medical records to prove whatever mental condition she suffers from nor do I have her testimony to admit that she lied in our interview or to the officers during their visits.*

3. *I swear by any and all means humanly possible that I have only told the truth throughout my immigration applications, that my prior marriage to Zamzam [ as well as my current marriage] was entered into under good faith, and that my ex-wife has complicated this entire matter by lying as a result of whatever mental health condition she suffers from. I recognize that I cannot speak on Zamzam's behalf and that her actions would lead anyone to serious suspicion, but please do not punish me for her behavior. She has misled me just as much as she has misled you and I ask that you please recognize the position I have been put in.*

51. The Affidavit from Mrs. Lili, dated December 31, 2024, states:

1. *My Name is Zineb Lili, a US Citizen. I met Mahmood Yousif Ismael Al Ani and fell in love with him and married him in good faith and not for immigration purposes. Mahmood and I have one child, Youssef, DOB 09/19/2020. Mahmood and I have lived together since our marriage on September 15, 2020. We continue to live together in marital union with our child.*

2. *Mahmood's previous marriage to Zamzam has created a lot of headaches for us. I feel that I am being punished for no fault of my own. It also appears that my husband is being punished due to the craziness of his ex-wife. Mahmood and Zamzam married and lived together as husband and wife for about a year before she even petitioned for him. After she petitioned for him she clearly used that as a weapon against him. She took advantage of him both emotionally and financially. The relationship turned toxic due to Zarnzam'z serious mental health issues that escalated heavily during the course of their marriage. At times she would disappear without any notice and even become violent with Mahmood and others. She has gotten herself into serious trouble with the police over her uncontrollable outbursts and has acted completely outrageously as well. Mahmood explained all this to you in our previous submissions. Some evidence of that was submitted by Mahmood previously.*

3. *It is very clear that that she purposely sabotaged his case when things did not go according to her wishes. My husband explained to you before that the inconsistencies in their interview with the Service were intentionally given by Zamzam. My husband could not provide you proof of her mental condition because he cannot access her medical records. He has no authority to get those records.*

4. *Since I have been with Mahmood over four years now I know for sure that Mahmood told you the truth from the beginning and married Zamzam in good faith. Unfortunately,*

14

*his choice was a bad one. He did not know, as she was good at hiding her mental condition and her conniving ways of manipulating him. I recognize that I cannot speak on Zamzam's Mahmood's behalf but implore you to save our marriage and our life as a family. We are working hard to provide a stable home for our son. If my husband is forced to leave the United States for sure we will accompany him. I dread that day knowing that our son will be deprived of living his formative years in the country of his birth. As for me, I'll go wherever Mahmood is going. I'll be happy wherever we end up. I just don't want this for our son. He should be able to continue his life uninterrupted in the United States.*

52. "After reviewing the evidence and the testimony provided at the interview our records indicate that the beneficiary's is not eligible for the requested benefit sought. Based on review of the testimony and the documentation in the record, USC IS finds that there is substantive and probative evidence of the beneficiary's attempt to obtain a benefit through a fraudulent marriage. Accordingly, pursuant to INA 204(c)(l), it appears that the approval of your petition is prohibited by statute." *See* Exhibit 1

53. USCIS concluded that "based on review of the entire record" Mahmood Al Ani failed to establish that the Beneficiary's prior marriage to Ms. Jama was bona fide and not entered into in order to circumvent immigration laws so that the Beneficiary could obtain permanent resident status.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

54. It is generally recognized prudential requirement of administrative law that administrative remedies should be exhausted before an appeal is filed in federal court. However, "the INA does not require aliens to appeal denials of spousal immigration petitions to the BIA before seeking relief in federal court." *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006). *See also* 8 C.F.R. § 103.3(a)(ii) (providing that a party "may" appeal to the BIA.) Thus, Plaintiffs' filing before this court, without first raising an appeal before the BIA, is proper.

## FIRST CLAIM FOR RELIEF

**Violation of APA for Agency Action that is Arbitrary, Capricious, and Abuse of Discretion, or Otherwise Not in Accordance with Law, 5 U.S.C. §§702, 706(2)(A),**

55.  Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

56.  The purpose of the APA is to prevent abuse of discretion by federal agencies by granting the federal judiciary authority to review the actions of such agencies.

57.  One mechanism the APA uses to prevent abuse of discretion is to place time constraints upon agencies so that agencies do not use prolonged delays for the sole purposes of harassment and intimidation, or as a method to disguise a refusal to act. For this reason, APA requires administrative agencies to conclude matters presented to them "within a reasonable time." APA §555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter present to it")

58.  This Court also may hold unlawful and set aside agency action that, inter alia, is found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. §706(2)(A); or "without observance of procedure required by law," 5 U.S.C. §706(2)(D). "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §551(13).

### *USCIS UNREASONABLY DELAYED THE ADJUDICATION OF MS. LANI'S FORM I-130, PETITION FOR ALIEN RELATIVE*

59.  USCIS took and over two years to issue a NOID to Plaintiff's petitions.

60.  USCIS's unreasonable delay in adjudicating Plaintiff's I-130, and I-485 petitions was such, that it disadvantaged Plaintiffs from presenting evidence that could have been attainable.

***USCIS'S FAILED TO PROPERLY CONSIDER MATERIAL EVIDENCE CONTAINED IN THE RECORD OF PROCEEDINGS***

61.  An agency decision is arbitrary and capricious if the agency fails to examine relevant record evidence or articulate a satisfactory explanation for the decision. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42-43 (1983). The arbitrary and capricious standard requires that the court determine not merely whether the agency failed to consider relevant evidence, but whether it failed to consider relevant evidence that was actually before it. *Id. at* 42-43.

62.  Contrary to USCIS's decision, which the service claims is "based on review of the *entire record,"* both the 2024 NOID and the denial of the Plaintiff's I-130, and I-485 petitions failed to acknowledge the full record of evidence that was submitted in support of the said petition.

63.  More specifically, in the denial of Mrs. Lili's second I-130 petition, and Mr. Al Ani's second Form I-485 USCIS only summarized some, but not all of the evidence that Mrs. Lili presented. One of the most important documents that USCIS conveniently failed to acknowledge and consider the content of, was Ms. Jama's sworn statement, dated October 20, 2022, in which she admitted to providing false testimony to the Immigration Officer regarding her marriage to the Beneficiary, retracted the false declarations and confirmed the bona fides of her marriage to the Beneficiary. See the 2022 Statement by Ms. Jama, appended as Exhibit 2. USCIS also did not consider the 2022 Statement by Mr. Al Ani, appended as Exhibit 4, and 2024 Statement by Mrs. Lili, appended as Exhibit 3. USCIS disregarded this documents entirely and made no acknowledgment of their review of the Affidavits.

Thus, USCIS' failure to properly consider material evidence in the record was arbitrary and capricious.

### USCIS DENIAL OF MRS. LILI'S I-130 PETITION WAS BASED ON INCORRECT ANALYSIS OF THE FACTS

64. Failure to consider this material evidence led to erroneous conclusions made by USCIS. First, USCIS incorrectly concluded that there was no evidence presented that Ms. Jama and Mr. Al Ani were engaged in a bone fide marriage as evidenced by the Affidavits submitted in the instant Petition. USCIS concluded "the Affidavits you submitted are not supported by any objective evidence. Therefore, they are not probative, and will be assigned only nominal evidentiary weight." USCIS did not evaluate the record as a whole, and gave no recognition to the statements that were part of the record. Most importantly that Ms. Jama, regarding her and Mr. Al Ani's I-130 application, which was denied swore "I intentionally did not care what I say and how it might affect Mahmood because I was just in one of those moods. Similarly, when the officers came to visit at my mother's home, I just did not care about the effect of my answers on Mahmood. However, I cannot speak about why my sister did not tell the officers that I was married to Mahmood. She knew that and all my family knew that. We did not marry in secret nor did we ever intended to keep it a secret." See Exhibit 2.

65. Second, USCIS noted that a review of the record showed that Mr. Al Ani and Ms. Jama never lived together in a bone fide marriage as husband and wife. Mr. Al Ani and Ms. Jama's Affidavits show that they in fact lived together in a bone fide marriage and other important details such as Ms. Jama did not have a boyfriend at the time of their marriage, which USCIS took major note of. "I was never in a relationship with Deforest Flowers. That guy never lived with me at the McGuffey Rd address." See Ms. Jama's Affidavit Exhibit 2.

18

***USCIS' DENIAL OF MRS. LILI'S I-130 PETITION WAS IMPROPER BECAUSE THE FILE DOES NOT CONTAIN SUBSTANTIAL AND PROBATIVE EVIDENCE***

66.  In order for a visa petition to be barred by INA 204(c), there must be "substantial and probative evidence" of such an attempt or conspiracy and the derogatory evidence must be contained in the alien's file.  *See* 8 CFR §103.2(b)(16)(i), 204.2(a)(1)(ii); *Matter of Tawfik*, 20 I&N Dec. 166, 167 (BIA 1990).  The degree of proof necessary to constitute "substantial and probative evidence" is more than a preponderance of evidence, but less than clear and convincing evidence; that is, the evidence has to be more than probably true that the marriage is fraudulent. *Matter of Singh*, 27 I&N Dec. 598 (BIA 2019).  The substantial and probative evidence standard "requires the examination of all the relevant evidence and a determination as to whether such evidence, when viewed in its totality, establishes, with sufficient probability, that the marriage is fraudulent." *Singh,* 27 I. & N. at 607 (internal citations omitted). Both direct as well as circumstantial evidence may be considered in determining whether Section 204(c) of the Act applies to a petition. *Id.* at 608.

67.  USCIS rationale for finding that Beneficiary's prior marriage falls within INA 204(c), rests entirely on Mrs. Lili.  Its denial of Mrs. Lili's I-130 petition did not depend on "substantial and probative evidence" because there is no affirmative, direct, competent evidence that Beneficiary's marriage to Ms. Jama was more probably than not fraudulent at its inception, an evidentiary showing required by statute and regulations.

68.  Rather contrary, the complete record of evidence establishes that Ms. Jama and the Beneficiary's marriage was bona fide and not for immigration benefits.  In determining whether a petitioner entered into a fraudulent marriage, [t]he central question is whether the bride and groom intended to establish a life together at the time they were married." *Matter of Laureno,* 19 I.&N. Dec.1, 2-3  (1983) Relevant evidence that establishes intent includes:

"proof that the Beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences." *Id.*

69. In the case at hand, the record of evidence that the Beneficiary and his former spouse, Ms. Jama intended to establish a life together at the time they were married, includes insurance policies, proof of joint residence, income tax forms, bank accounts, affidavits from friends, neighbors, and coworkers; and testimony from both Ms. Zama and the Beneficiary.

70. The only piece of evidence that is derogatory in the record is that "Ms. Jama was found living at a different address as the beneficiary with her three sisters at 1555 Whispering Willow Lane, Hilliard, Ohio, Columbus, Ohio. In addition, Ms. Jama was arrested on October 1, 2018 for domestic violence against her "live-in boyfriend named Deforest Flowers" at the home address: 2655 McGuffey Rd, Columbus, Ohio, during the beneficiary's marriage to Ms. Jama." Ms. Jama admitted in her Affidavit (Exhibit 2) that she never had a boyfriend and she lied to the Immigration Officer because she was mad and angry with her husband, the Beneficiary. Ms. Jama's actions are further supported by evidence of her unstable mental health, both at time of marriage to the Beneficiary and years following their divorce as evidenced by her actions her Affidavit (Exhibit 2) and Mr. Al Ani's Affidavit (Exhibit 4).

71. USCIS decision fails to meet the substantial and probative evidence standard, and is therefore arbitrary and capricious inasmuch as it departs from agency precedent.

### *USCIS' DECISION DENYING MRS. LILI'S I-130 PETITION FAILED TO REACH AN INDEPENDENT CONCLUSION BASED ON THE EVIDENCE*

72. The decision denying Ms. Lili's I-130 petition failed to reach an independent conclusion based on the evidence and violates *Matter of Tawfik*, 20 I & N Dec. 166 (BIA 1990), which

holds that "the district director should not give conclusive effect to determination made in prior proceedings, rather, should reach an independent conclusion on the evidence of record."

73. The fact that USCIS in Ms. Lili's case also failed to acknowledge and evaluate the evidence in the NOID response, suggests that the record was not thoroughly and independently assessed. Rather, USCIS relied on the summary of the determination made in prior proceedings, which also missed the pertinent response to the NOID.

74. Also, USCIS did not consider Ms. Jama's Affidavit statement in which she retracted her prior statements about criteria that would render her marriage to the beneficiary as not bone-fide . More specifically, Ms. Jama admitted that when she spoke with an Immigration Officer about her relationship with the Beneficiary, she falsely told the officer that their marriage was not genuine and that it was for the purpose of getting the Beneficiary immigration benefits. Ms. Jama explained that the only reason she said that was because she was angry with the Beneficiary. Ms. Jama expressed her willingness to testify to the contents of her sworn statement, but USCIS made no efforts to contact Ms. Jama and independently assess her statement and question her credibility.

## SECOND CLAIM FOR RELIEF

### Violation of Due Process Clause of the Fifth Amendment of the U.S. Constitution

75. Plaintiffs reallege and incorporate reference all preceding paragraphs as if fully set forth herein.

76. Due process protects a noncitizen's liberty interest in the adjudication of applications for relief and benefits made available under the immigration laws. *See Arevalo v. Ashcroft,* 344

F/3d 1, 15 (1st Cir. 2003) (recognizing protected interests in the "right to seek relief" even

when there is no "right to the relief itself")

### *THE DENIAL OF MRS. LILI'S I-130 PETITION ON BEHALF OF HER IMMEDIATE RELATIVE SPOUSE IMPLICATES HER LIBERTY INTEREST IN MARRIAGE AND FAMILY LIFE*

77. The U.S. Constitution's protection of marriage and family life encompasses a U.S. Citizen's

choice to build his marital home in the United States. *More v. City of E. Cleveland*, 431 U.S.

494 (1977); *see* also *Griswold v. Connecticut*, 38 U.S. 479, 502 (1965) (White, J.,

concurring) (describing the right to marry and "establish a home" as one of the "basic civil

rights of man").

78. A U.S. Citizen's liberty interest in marriage and family life is no less fundamental when it

involves immigrant families.  *Fiallo v. Bell*, 430 U.S. 787, 794(1977); *Zablocki v. Redhail,*

434 U.S. 374, 384 (1978).  Congress has made family unity a central goal of our immigration

laws.  A U.S. Citizen may petition the government for a visa for her non-citizen spouse, and

Congress has accorded such petitioner a "most favored" position under our immigration

laws. *Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191, 2197 (2014) (noting that "immediate

relatives" of U.S. Citizens are "most favored" under U.S. Immigration laws).

79. USCIS's denial of Mrs. Lili's I-130 petition significantly burdens her fundamental liberty

interest in marriage and family life, by making it virtually impossible for her spouse to

legally reside in the United States with her.

80. Any foreign national who attempts or conspires to enter into a marriage for the purpose of

evading U.S. immigration laws is ineligible for an immigrant visa (8 U.S.C. § 1154(c)(2));

thus, he can never become a citizen of, or even reside permanently in, the United States. *See*

*Ghaly v. I.N.S.*, 48 F.3d 1426, 1436 (7th Cir. 39 1995) (Posner, J., concurring) ("This

22

[Section 204(c)] is a harsh law, and one would expect the government in enforcing it to make at least modest efforts to guard against mistakes.").

81. The USCIS, by delegation of the Attorney General and the DHS Secretary, has exclusive authority over the adjudication of I-130 petitions. This means that, even in the context of removal proceedings, an immigration judge would be unable to adjudicate, or review the denial of, an I-130 petition. The only recourse for overturning an unlawful Section 204(c) finding, other than through the BIA, lies in the federal courts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court issue judgment in its favor and against Defendants and issue the following relief:

A. Declare that USCIS denial of Plaintiffs' Form I-130, Immigrant Petition for an Alien Relative and finial of Plaintiff's Form I-145 is unlawful, order USCIS to re-adjudicate and approve the I-130 Petition in a proper and lawful manner;

B. Declare that USCIS conclusion that INA § 204(c) precluded approval of Plaintiffs' I-130 Petition violated the statute, governing regulations, and Board of Immigration Appeals precedent;

C. Declare that there is not substantial and probative evidence supporting a denial of the I-130 Petition pursuant to INA § 204(c);

D. Award attorneys' fees and costs; and

E.  Grant such other relief as this Court finds appropriate.

Respectfully Submitted,

/s/Ghassan M. Shihab___
Ghassan (Gus) M. Shihab
Ohio Bar Number: 0061098
Eric Dennis Ricker

Ohio Bar Number 0097733
Law Firm of Shihab & Associates
5925 Wilcox Pl. Ste A
Dublin, Ohio 43016
Tel. 614-255-4872
Fax. 614-255-4870
Email: gus@shihab.law
             ericker@shihab.law

Counsel for Plaintiffs

## <u>INDEX OF EXHIBITS</u>

Exhibit 1: Copy of 2024 Denial of Petitioner's Form I-130, Petition for Alien Relative.

Exhibit 2: Copy of Ms. Jama's Affidavit, dated October 13, 2022, submitted in support of
        Mrs. Lili's Form I-130, Petition for Alien Relative.
Exhibit 3: Copy of Mrs. Lili's Affidavit, dated December 31, 2024, submitted in support of
        Mrs. Lili's Form I-130, Petition for Alien Relative.
Exhibit 4 Copy of Mr. Al Ani's Affidavit, dated June 22, 2022, submitted in support of
        Mrs. Lili's Form I-130, Petition for Alien Relative.

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2025, the foregoing *Complaint* was served on the following

through the CM/ECF system:

**DONALD J. TRUMP, IN HIS OFFICAL
CAPACITY, PRESIDENT OF THE UNITED
STATES OF AMERICA;**

**KRISTI NOEM, SECRETARY
U.S. DEPARTMENT OF HOMELAND
SECURITY,**

**U.S. DEPARTMENT
OF HOMELAND SECURITY,**

**KIKA SCOTT, SENIOR OFFICIAL
PERFORMING THE DUTIES OF THE
DIRECTOR, U.S. CITIZENSHIP AND
IMMIGRATION SERVICES**

**ANDREW DAVIS, ACTING DEPUTY
DIRECTOR, U.S. CITIZENSHIP AND
IMMIGRATION SERVICES**

Respectfully Submitted,

/s/Ghassan M. Shihab___
Ghassan (Gus) M. Shihab

Ohio Bar Number: 0061098
Eric Dennis Ricker
Ohio Bar Number 0097733
Law Firm of Shihab & Associates
5925 Wilcox Pl. Ste A
Dublin, Ohio 43016
Tel. 614-255-4872
Fax. 614-255-4870
Email: gus@shihab.law
   ericker@shihab.law

Counsel for Plaintiffs